UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
   DAMON MONK,

                          **MEMORANDUM & ORDER**
                Petitioner,

                             **12-CV-04350 (NGG)**

   -against-

   UNITED STATES OF AMERICA,

                Respondent.

------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner Damon Monk brings this pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255. (Mot. to Vacate, Set Aside, or Correct Sentence ("Pet.") (Dkt. 1).)[1] Petitioner pled guilty to conspiracy to distribute and to possess with intent to distribute cocaine base and MDMA, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(iii), and 841(b)(1)(C); distribution of and possession with intent to distribute cocaine base and MDMA, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), and (b)(1)(C); and maintaining a drug-premises, in violation of 21 U.S.C. §§ 856(a)(1), (a)(2), and (b). Petitioner was sentenced to 262 months imprisonment and five years supervised release. Petitioner appealed and was later resentenced to 135 months imprisonment and twelve years supervised release. Petitioner now challenges his conviction on the grounds that he received ineffective assistance of counsel in violation of the Sixth Amendment and that the court did not have proper jurisdiction to impose a weapon enhancement to his sentence. For the reasons set forth below, the Petition is DENIED.

---

[1] Citations which reference "Dkt." are documents from the instant case, Monk v. United States, No. 12-CV-04350 (NGG) (E.D.N.Y.). Citations referring to "Trial Dkt." are documents filed during the underlying criminal proceedings, United States v. Monk, No. 06-CR-0642 (NGG) (E.D.N.Y.).

## I. BACKGROUND

On August 23, 2006, the New York City Police Department executed a search warrant at apartment 4-A of 1550 East New York Avenue in Brooklyn, New York. (Compl. (Trial Dkt. 1).) At the time of the search, Petitioner and his three co-defendants were inside the apartment. (Mem. of Law in Opp'n to Pet. ("Opp'n") (Dkt. 9) at 5.) Officers discovered over 100 grams of crack cocaine, 15 grams of ecstasy (i.e. MDMA), over 25 grams of marijuana, a small amount of heroin, and over $5,500 throughout the apartment. (Sentencing Mem., Ex. 8 ("Evidence Vouchers") (Trial Dkt. 107-8).) In the kitchen, officers found drug paraphernalia for cooking crack cocaine. (Pet. at 15; Evidence Vouchers.) In Petitioner's bedroom, officers also discovered a 9-millimeter round of ammunition, a loaded 9-millimeter magazine with eight rounds of ammunition, and a box of .40 caliber ammunition. (Compl. ¶ 3; Evidence Vouchers.)

John S. Wallenstein was appointed to represent Petitioner on August 28, 2006, serving as counsel during pre-trial proceedings and later representing Petitioner at trial. (Wallenstein Decl. (Dkt. 9-6) ¶ 2.) On September 25, 2006, Petitioner and his co-defendants were charged with: (1) conspiring to distribute and to possess with intent to distribute (a) more than 50 grams of cocaine base and (b) MDMA; (2) distributing and possessing with intent to distribute (a) more than 50 grams of cocaine base and (b) MDMA; and (3) maintaining a premises for the purpose of unlawfully manufacturing, distributing, storing, and using controlled substances. (Indictment (Trial Dkt. 21).)

The Government offered a plea agreement to Petitioner, which was delivered to Wallenstein on November 2, 2006, and was set to expire on November 27, 2006. (Jones Decl. (Dkt. 9-5), Ex. B.) If Petitioner pled guilty on or before this expiration date, the Government was to recommend "an additional one-level reduction" of Petitioner's offense level. (Id.) The

agreement outlined that Petitioner would plead guilty to Count One of the Indictment. (Jones Decl., Ex. A ¶ 1.) The Sentencing Guidelines calculation in the plea offer stated Petitioner was subject to 120 to 135 months imprisonment, consistent with a base offense level of 34, a ten-year mandatory minimum sentence, a two-level reduction for acceptance of responsibility, and a one-level reduction pursuant to U.S.S.G. § 3E1.1(b). (Id. ¶ 2.) The plea offer stated that the Guidelines estimate "is not binding on the [U.S. Attorney's] Office, the Probation Department or the Court. If the Guidelines offense level advocated by [any of these entities] is different from the estimate, the defendant [is not] entitled to withdraw the plea." (Id. ¶ 3.) The offer also contained a collateral attack waiver if Petitioner was sentenced at or below 151 months imprisonment. (Id. ¶ 4.) Petitioner did not agree to the plea offer from the government by the expiration date. (Pet., Ex. A at 18 (showing agreement was signed only by the Supervising U.S. Attorney and no other parties).) Neither party was bound by the foregoing terms.

Jury trial for Petitioner began on October 1, 2007. (Trial Tr. (Dkt. 9-1).) The Government called Annette Darant and Kim Tyler as witnesses. (Id.) The women had knowledge of narcotics trafficking in their building at 1550 East New York Avenue and had signed a petition complaining to the New York City Public Housing Authority. (Id. at 43-44, 61-64.) Tyler also testified about an incident where Petitioner threatened to "blast" her, which she understood to mean "shoot" her. (Id. at 66-67; Police Rep. (Trial Dkt. 107-7).) Tyler reported this incident to the police. (Trial Tr. at 66-67; Police Rep.)

On October 2, 2007, the second day of trial, Petitioner pled guilty to the three counts of the Superseding Indictment. (Plea Tr. (Dkt. 9-2) at 110.) Petitioner swore under oath that his mind was clear and that he understood the court's statements concerning the effects of a guilty plea. (Id. at 92-93.) Petitioner stated that he was not satisfied with his attorney because they

3

"had a personality clash," but, according the statements of the court on record, the court had previously resolved this and related issues the day before. (Id. at 94.) The Government listed the details of each count and the elements that would need to be proven beyond a reasonable doubt to a jury. (Id. at 97-99.) The court described the rights that Petitioner would waive should he plead guilty, all of which Petitioner said he understood. (Id. at 100-03.) After discussing the possible penalties and sentencing associated with all three counts, Petitioner pled guilty to the charges. (Id. at 103-08, 110.)

A Pre-Sentence Report ("PSR") was issued by the Probation Department, which calculated Petitioner's offense level as 41. (Opp'n at 7.) Estimating Petitioner to be in criminal history category I, the PSR advised a sentencing range of 324-405 months imprisonment. (Id.) The base offense level was 32 plus the following enhancements: (1) a two-point weapon enhancement pursuant to U.S.S.G. § 2D1.1(b)(1); (2) a three-point enhancement for Petitioner's supervisory role in the conspiracy pursuant to U.S.S.G. § 3B1.1(b); (3) a two-point enhancement for use of a minor in the distribution of narcotics pursuant to U.S.S.G. § 3B1.4; and (4) a two-point enhancement for obstruction of justice for threatening to shoot a witness and tampering with another potential witness pursuant to U.S.S.G. § 3C1.1. (Id. at 7-8.) No downward adjustment was awarded for acceptance of responsibility. (Id. at 8.)

A Fatico hearing was held on June 30, 2009. (Id.) The Government presented the 85 rounds of ammunition that were discovered in Petitioner's bedroom and a photograph from 2003 of Petitioner holding two firearms. (Id.; Evidence Vouchers.) The arresting officer testified that he recovered these exhibits from apartment 4-A, in addition to other ammunition suitable for different firearms. (Opp'n at 8; Evidence Vouchers.) One of Petitioner's co-defendants, Darren Finklea, testified pursuant to a cooperation agreement with the Government, attesting to

Petitioner's possession of firearms. (Id. at 8-9.) Finklea stated that Petitioner possessed firearms to protect himself and his family. (Id.) Finklea also testified that the photograph of Petitioner holding firearms was taken in apartment 4-A and that Petitioner stored ammunition in the apartment. (Id. at 9.) A last witness, Special Agent Renee Repasky, testified that Petitioner placed a telephone call to Jermaine Chadwick, a potential witness for the Government, on August 5, 2007, and requested that Chadwick provide false information about the narcotics activity in 1550 East New York Avenue. (Id.; Phone Tr. (Trial Dkt. 107-9).)

On August 10, 2009, the court sentenced Petitioner to 262 months imprisonment, followed by a five-year term of supervised release. (Sentencing Tr. (Dkt. 9-3) at 18-19.) The court used a base offense level of 32 and added a two-point weapon enhancement and three-point enhancement for supervisory role in the conspiracy. (Id. at 7-8.) The court found insufficient evidence to apply the enhancements for use of a minor or obstruction of justice. (Id. at 8.) At criminal history category I and a total offense level of 37, the Sentencing Guidelines give a range of 210 to 262 months imprisonment. (Id. at 9.) Due to the severity of the crimes committed by Petitioner and having considered a sentence above the Guidelines range, the court sentenced Petitioner to the upper end of the Sentencing Guidelines. (Id. at 18.)

Petitioner appealed his sentence to the Second Circuit on August 10, 2009, pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 2D1.1(c)(2) to retroactively apply a sentence reduction due to changes in law. (Appeal (Trial Dkt. 123) at 1-2.) The Second Circuit vacated the decision of this court and remanded for further proceedings. (Mandate (Trial Dkt. 130).) Specifically, the Second Circuit ordered this court to "make specific findings on whether a gun was possessed during the relevant offense conduct." (Id. at 4.) The Second Circuit found Petitioner's argument against the three-point upward adjustment for a supervisory role to be without merit. (Id.)

5

This court held the resentencing on January 24, 2012. (Resentencing Tr. (Dkt. 9-4).) Under the Fair Sentencing Act of 2010, Petitioner's base offense level for a crime involving cocaine base was lowered from 34 to 28. (Id. at 16.) A three-level enhancement was, once again, applied for Petitioner's supervisory role in the drug enterprise. (Id. at 31.) The court also found by a preponderance of the evidence, that the two-level weapon enhancement should be applied. (Id.)

In finding sufficient evidence to prove Petitioner possessed a weapon in connection with the relevant offense conduct, the court relied on a confidential informant's observations of firearms in the apartment during the relevant time period, the testimony of Petitioner's co-defendant, Finklea, the large amount of handgun ammunition in Petitioner's bedroom, the primary use of the apartment to manufacture drugs, and Petitioner's need to defend himself in light of his involvement with controlled substances. (Id. at 26-30.) The court found this evidence was consistent with the application of the weapon enhancement, citing § 2D1.1 of the Sentencing Guidelines, because it was not "clearly improbable that the weapon was connected with the offense involved." (Id. at 30.)

In light of these findings, the court resentenced Petitioner to 135 months imprisonment following by twelve years of supervised release. (Id. at 48-49.) Petitioner filed an appeal of the resentencing with the Second Circuit on February 16, 2012. (Notice of Appeal (Trial Dkt. 148).) Petitioner then filed a motion to withdraw his appeal, which was granted by the Second Circuit with prejudice.[2] (Mandate (Trial Dkt. 149).) On August 24, 2012, Petitioner filed the instant Petition for a Writ of Habeas Corpus. (Pet.)

---

[2] This is sufficient as a prerequisite for Petitioner's claim under § 2255. "There is no requirement that the movant exhaust his remedies prior to seeking relief under § 2255. However, the courts have held that such a motion is inappropriate if the movant is simultaneously appealing the decision." Rule 5, Advisory Committee Notes, Rules Governing § 2255 Proceedings (1976). Petitioner was not permitted to appeal his resentencing further because the

## II. STANDARD OF REVIEW

A prisoner who was convicted and is in federal custody may collaterally attack his sentence by filing a Petition for a Writ of Habeas Corpus. See 28 U.S.C. § 2255(a). The sentence may be attacked if (1) it "was imposed in violation of the Constitution and laws of the United States," id., (2) "the court was without jurisdiction to impose such a sentence," id., (3) it "was in excess of the maximum authorized by law," id., or (4) "the sentence is otherwise subject to collateral attack," id. The defendant must prove that he or she was convicted on the basis of "an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotations and citations omitted).

"[B]ecause requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult to upset a conviction by collateral, as opposed to direct, attack." Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995) (citing United States v. Frady, 456 U.S. 152, 165 (1982)). Therefore, a defendant must show "both a violation of [his] Constitutional rights and 'substantial prejudice' or a 'fundamental miscarriage of justice.'" Ciafarano v. United States, 585 F. Supp. 2d 360, 368 (E.D.N.Y. 2008) (quoting Ciak, 59 F.3d at 301). However, in a court's application of these standards, "[a] pleading by a pro se litigant must be construed liberally." Thompson v. Choinski, 525 F.3d 205, 209 (2d Cir. 2008) (emphasis omitted).

---

Second Circuit granted Petitioner's motion to withdraw his appeal with prejudice. Therefore, at the time Petitioner filed his Petition, he was not simultaneously appealing his resentence, but had completed his appeals process.

## III. POTENTIAL BARS TO PETITIONER'S CLAIMS

### A. Collateral Attack Waiver

As a preliminary matter, the court will address Petitioner's argument that he should not be bound by the collateral attack waiver found in the plea agreement. (Pet. at 18; Pet., Ex. A ¶ 4.) The Government never stated that Petitioner should be bound by this waiver. Because Petitioner never accepted the plea agreement, the court finds that Petitioner is not bound by the collateral attack waiver contained therein. The court will therefore consider the arguments in his Petition.

### B. Procedural Bars

When examining a § 2255 Motion, there are two procedural bars which must be taken into account. First, a defendant "may not relitigate issues that were raised and considered on direct appeal." United States v. Perez, 129 F.3d 255, 260-61 (2d Cir. 1997). Second, a defendant "is also barred from raising claims in her § 2255 motion that she failed to raise on direct appeal unless she shows cause for the omission and prejudice resulting therefrom." Bousley v. United States, 523 U.S. 614, 622-23 (1998). There is an exception to the second bar. An ineffective assistance of counsel claim may be brought in a § 2255 motion regardless of whether the defendant raised the claim on direct appeal. See Massaro v. United States, 538 U.S. 500, 504 (2003). Therefore, although Petitioner did not raise an ineffective assistance of counsel claim on direct appeal, he is not barred from raising that claim in the instant Petition.

## IV. PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy a stringent two-prong test: (1) he

must show that counsel's performance was deficient in that the "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) the petitioner must show that "the deficient performance prejudiced the defense . . . [by producing] errors . . . so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 692-93 (1984); accord Morales v. United States, 635 F.3d 39, 43 (2d Cir. 2011). The two-prong Strickland test is "highly demanding." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986). The petitioner bears the burden of establishing both that his counsel was deficient and that he was prejudiced. See United States v. Birkin, 366 F.3d 95, 100 (2d Cir. 2004).

Defense counsel has a duty to "communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012). Counsel renders ineffective assistance when failing to advise his client of an offer or failing to allow his client to consider an offer before it has expired. See id. To prove prejudice by defense counsel's failure to communicate a plea offer, a defendant has a burden to establish a reasonable probability that: (1) the defendant "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel," id. at 1409, (2) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time," id., and (3) "if the prosecution had the discretion to cancel [the plea offer] or the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented," id. The standard for "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### A. Counsel's Performance

Petitioner has the "highly demanding" burden of proving that his counsel's performance was deficient, see Kimmelman 477 U.S. at 382, and this court finds that Petitioner failed to meet this burden and cannot succeed on his claim. Petitioner contends that his counsel, Wallenstein, failed to communicate the Government's offer of a plea agreement and Petitioner was induced instead to go to trial. (Pet. at 16.) Petitioner offers no evidence of this other than his own statement that he did not receive the offer. (See id.)

In evaluating Petitioner's claim, the court has four pieces of evidence before it. First is the plea offer from the government, which provides advisory Sentencing Guidelines. (Pet., Ex. A.) Second are representations by Petitioner stating that he never received the plea offer from the Government and that had he received the plea offer, he would have accepted it in a timely fashion. (Pet. at 16-17.) Third is a declaration signed by Wallenstein which states: (1) that Wallenstein's standard practice was to promptly communicate all plea offers to his clients (Wallenstein Decl. ¶ 5), (2) that Wallenstein received the plea offer sometime in early November 2006 (id. ¶ 4), (3) that Wallenstein did not recall precisely when he communicated the offer to Petitioner but that it was likely at their November 8, 2006, meeting (id. ¶¶ 5-6), and (4) that Wallenstein recalled Petitioner was adamant about his refusal to accept a plea offer carrying a ten-year mandatory minimum sentence (id. ¶ 7). Lastly, Wallenstein's statement that Petitioner was unwilling to accept a plea offer containing a ten-year mandatory minimum sentence is corroborated by the declaration of Jason Jones, Assistant U.S. Attorney and lead prosecutor in Petitioner's criminal case. (Jones Decl. ¶ 6.) Both Jones, recalling a conversation had with Wallenstein, and Wallenstein himself, state that an offer containing less than a ten-year

10

mandatory minimum was never offered to Petitioner and that Petitioner was unwilling to accept an offer containing a ten-year mandatory minimum. (Id.; Wallenstein Decl. ¶ 7.)

The court finds that Petitioner fails to satisfy the burden of proof to show that Wallenstein's performance as defense counsel was deficient, the first prong of the "highly demanding" Strickland test. See Kimmelman, 477 U.S. at 382; Strickland, 466 U.S. at 687. On this record of evidence, the court cannot conclude that Wallenstein did not communicate the plea offer to Petitioner in a timely fashion. The evidence in the form of Petitioner's assertions is countered by equally, if not more, convincing contradictory evidence from Wallenstein's declaration that demonstrates Wallenstein's standard practice in communicating plea offers to clients and the general timeframe in which he likely communicated the offer to Petitioner. (Wallenstein Decl. ¶¶ 4-5.) Therefore, Petitioner cannot succeed on an ineffective assistance of counsel claim because he provided insufficient evidence to prove his allegation that he never received the plea agreement.

### B. Potential Prejudice

Regarding Strickland's second prong, even if Wallenstein had failed to promptly provide Petitioner with the plea offer, Petitioner has not demonstrated a reasonable probability that he would have been prejudiced. Petitioner contends that, had he received the plea offer, he would have accepted the offer in a timely manner and therefore his offense level would have been subject to two downward adjustments. (Pet. at 17.) Corroborating evidence from both Wallenstein and Jones shows that Petitioner would have refused any plea offer providing for a ten-year mandatory minimum sentence. (Wallenstein Decl. ¶ 7; Jones Decl. ¶ 6.) Because the plea offer in question included a ten-year mandatory minimum sentence and no other offer was

provided by the Government, it is irrelevant whether it was communicated to Petitioner as Petitioner would have rejected its terms. (Jones Decl., Ex. A ¶ 1.)

The court need not address whether at sentencing it would have accepted the plea and sentenced Petitioner accordingly because Petitioner has failed to prove that he himself would have accepted the offer had he received it in a timely manner. Therefore, Petitioner has not proved a "reasonable probability," Missouri, 132 S. Ct. at 1408, that he was prejudiced by Wallenstein's actions.

## V. IMPOSITION OF WEAPON ENHANCEMENT

A sentence may be subject to a weapon enhancement "[i]f a dangerous weapon (including a firearm) was possessed [during the relevant offense conduct]," causing the level of the offense conduct to be "increase[d] by two levels." U.S.S.G. § 2D1.1(b)(1). The weapon enhancement in § 2D1.1(b)(1) "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, n.3; see also United States v. Sweet, 25 F.2d 160, 163 (2d Cir. 1994); Hernandez v. United States, Nos. 10-CR-149 (PAC), 12-CV-8741 (PAC), 2013 WL 5903096 at *3 (S.D.N.Y. Nov. 4, 2013) (stating that a court may infer that a weapon that was kept "in the same location as the drugs seized . . . was connected with the offense").

### A. Subject Matter Jurisdiction

Petitioner contends that because he was not convicted of a weapon offense in violation of 18 U.S.C. § 924(c), this court did not have proper jurisdiction to impose a weapon enhancement under U.S.S.G. § 2D1.1(b)(1). (Pet. at 18.) This is not the case. In fact, when a defendant is convicted of an offense under 18 U.S.C. § 924(c) in addition to an underlying offense, a court is *not* permitted to apply a weapon enhancement at sentencing to that underlying offense. See

U.S.S.G. § 2K2.4, n.4 ("Do not apply any weapon enhancement in the guideline for the underlying offense, for example, if (A) a co-defendant, as part of the jointly undertaken criminal activity, possessed a firearm different from the one for which the defendant was convicted under 18 U.S.C. § 924(c); or (B) in an ongoing drug trafficking offense, the defendant possessed a firearm other than the one for which the defendant was convicted under 18 U.S.C. § 924(c)."); cf. United States v. Watts, 519 U.S. 148, 157 (1997) (defendant was acquitted of weapons charges under § 924(c) and the court was not precluded from finding, by a preponderance of the evidence, for a weapon enhancement at sentencing). This is, in part, to "avoid unwarranted disparity and duplicative punishment." U.S.S.G. app. C, amend. 599 (2000). Here, there is no risk of Petitioner receiving duplicative punishment precisely *because* he was not convicted and sentenced for a violation of 18 U.S.C. § 924(c). Accordingly, the court finds that there was proper jurisdiction to apply the weapon enhancement of two levels for Petitioner's sentencing and Petitioner's argument here is meritless.

### B. Preponderance of the Evidence

For sentencing purposes, a district court is permitted to take into account disputed facts which have been "established only by a preponderance of the evidence." United States v. Concepcion, 983 F.2d 369, 388 (2d Cir. 1992); see also United States v. Booker, 543 U.S. 220 (2005); United States v. Vaughn, 430 F.3d 518, 521 (2d Cir. 2005). Because there was proper jurisdiction to impose the weapon enhancement, the court is only required to find by a preponderance of the evidence that a dangerous weapon was possessed during the time of the relevant conduct from 2004 through 2006. If the court finds that a weapon was located in the apartment at the time of the offense conduct, the enhancement applies unless the court finds that

it was "clearly improbable that the weapon was connected with the offense involved." U.S.S.G. § 2D1.1, n.3.

The court found significant evidence which placed the weapon in the apartment at the time of the offense conduct. A confidential informant observed firearms in the apartment during the relevant time period of the offense conduct "on more than one occasion." (Resentencing Tr. at 29.) A large amount of handgun ammunition was found in Petitioner's bedroom, as was a photograph of Petitioner holding two firearms. (Opp'n at 8.) The presence of the firearms and ammunition was corroborated by Finklea, Petitioner's co-defendant, who stated that Petitioner stored ammunition in the apartment, posed for the photograph in the apartment, and possessed firearms to protect himself and his family. (Id. at 8-9.) As stated by the court, "[t]here's no need for ammunition without a gun." (Resentencing Tr. at 29.)

The court also found by a preponderance of the evidence that the firearms were used in conjunction with the offense conduct and warranted the weapon enhancement. The apartment in which the ammunition was located was used primarily to manufacture and distribute drugs as a "place of business," which the court determined from Petitioner's guilty plea to maintaining a drug premises. (Id. at 29.) This creates a high probability that "one, if not the principal reason [Petitioner] possessed a gun in apartment 4-A was to protect and further his drug dealing enterprise," and satisfies the preponderance of the evidence standard. (Id. at 30-31.) This protection was necessary because of the drug enterprise, not in spite of it. (Id. at 27-28.) Therefore, the court finds it probable that the ammunition found in the apartment and the firearm(s)—which court inferred to also be present in the apartment based on other evidence— were used in conjunction with the offense conduct. The court finds that the Government

14

established, by a preponderance of the evidence, that a firearm was possessed during the time of the offense conduct. Therefore, the two-level weapon enhancement was warranted.

C.      **Ineffective Assistance of Counsel Claim Relating to Weapons Enhancement**

"An attorney's 'failure to make a meritless argument does not amount to ineffective assistance.'" United States v. Noble, 363 F. App'x 771, 773 (2d Cir. 2010) (quoting United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999)). As stated, Petitioner's claim that the weapon enhancement was improperly applied at his sentencing and subsequent resentencing was without merit. Therefore, Petitioner cannot claim ineffective assistance of counsel based on Wallenstein's failure to challenge Petitioner's sentence on these grounds.

VII.    **CONCLUSION**

For the foregoing reasons, the Petition for Writ of Habeas Corpus is DENIED. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Dated: Brooklyn, New York
       July 17, 2014

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge